IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31027-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER GRANTING |
| THOMAS ROBERT HUDLOW, | ) | MOTION TO PUBLISH |
| | ) | |
| Appellant. | ) | |

The court has considered appellant's motion to publish the court's opinion of

May 13, 2014, and the record and file herein and is of the opinion the motion to publish

should be granted. Therefore,

IT IS ORDERED the motion to publish is granted. The opinion filed by the court

on May 13, 2014, shall be modified on page 1 to designate it is a published opinion and

on page 26 by deletion of the following language:

> A majority of the panel has determined this opinion will not be
> printed in the Washington Appellate Reports, but it will be filed for
> public record pursuant to RCW 2.06.040.

DATED: July 15, 2014

PANEL: Judges Brown, Siddoway, Fearing

FOR THE COURT:

LAUREL H. SIDDOWAY
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31027-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS ROBERT HUDLOW, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. —Thomas Hudlow appeals from his conviction for delivery of a controlled substance. He assigns numerous errors, but we only address two of the claimed errors, the harmful admission of hearsay and the sufficiency of the evidence. We reverse the conviction and remand for a new trial because the trial court admitted testimonial hearsay in violation of the confrontation clause and evidence rules. We rule that the hearsay was prejudicial because, based upon a jury instruction, the State needed to prove that Hudlow knew he was selling methamphetamine, not just a controlled substance. The evidence as to Hudlow's knowledge of the nature of substance is not overwhelming. We also address Hudlow's contention of insufficient evidence to convict

him, since we would need to dismiss the charges if he was correct. We rule there was sufficient evidence and thus remand for a new trial rather than dismiss.

## FACTS

Thomas Hudlow was convicted of selling methamphetamine based on a sting operation by the Tri-City Metro Drug Task Force. On the afternoon of February 25, 2011, a confidential informant and Hudlow agreed to meet in a parking lot shared by Winco and Jack in the Box in Kennewick, to conduct an illicit transaction. As planned, the informant then purchased a controlled substance from Hudlow.

The Metro Drug Task Force performed standard procedures leading to the controlled buy. Task Force detectives viewed a photograph of Thomas Hudlow to identify the target of the operation. Detectives Todd Carlson and Berry Duty searched the confidential informant to ensure he or she did not already possess drugs. Detective Carlson gave the informant $110 with which to purchase methamphetamine from Hudlow.

In route to the controlled buy, the confidential informant and Detective Todd Carlson rode in an unmarked police car driven by Detective Berry Duty. From the back seat of the car, the informant called someone on his or her cell phone. Todd Carlson overheard this conversation and his testimony concerning the conversation gives rise to one of the assigned errors. At trial, the following colloquy occurred between the State

and Carlson:

Q     Based on the information that you received, did you witness a phone call shortly before this purchase of methamphetamine from this defendant?

A     I did.

Q     And what arrangements did you understand had been made?

[Defense counsel]:  Based on hearsay.

[Prosecution]:  Not being admitted for the truth.  It's being admitted on how he contacted.

[Defense counsel]:  Still hearsay.

[Court]:  Sustained.  He can indicate what he observed.

[Prosecution]:  (Continuing)

Q     There was a phone call; is that right?

A     Correct.

Q     And did you listen in on that phone call?

A     I did.

Q     Were arrangements made to purchase drugs?

A     Correct.

Q     Were arrangements made to purchase a specific drug?

A     Correct.

Q     What was that drug specifically?

A     Specifically the drug that was intended to be purchased on this day was methamphetamine.

Q     Were arrangements made to purchase that specific drug at a specific place?

A     It was.

Q     What was that place?

A     That specific place was the Jack in the Box located on West Clearwater Avenue in Kennewick.

Q     And subsequently were arrangements made to have that transaction occur at a specific time?

A     It was.

Q     And what was that time?

A     Somewhere around 1430 hours.

Q     2:30 in the afternoon on February 25th, right?

A     Correct.

3

No. 31027-2-III
*State v. Hudlow*

Report of Proceedings (RP) at 15-16.

Under cross-examination, Detective Carlson further testified:

Q    How many people were in that vehicle?
A    Three.
Q    And is it in that vehicle that a phone call was placed?
A    It was.
Q    You didn't actually observe the number dialed?
A    No, I did not.
Q    You did not specifically hear the context of the phone call just the nature of the phone call; is that a fair statement?
A    That's fair.
Q    In your report you do not indicate any of the specific words or conversation that took place?
A    No, I do not.
Q    So in your police report you don't differentiate whether or not the request was meet me at the Jack in the Box or can you meet me where we usually meet or anything of that nature, correct?
A    No, the location had already been set.
Q    Prior to the phone call?
A    Yes, I believe so.
Q    And you were not privy to that phone call?
A    No, I was not.
Q    So the nature of that phone call was just are you on your way, are you coming, something like that?
A    Correct.
Q    And if [you] actually specifically heard the term or usage of drug phrases like, hey, bring me a teener then you would have written that down in your report, wouldn't you?
A    Yeah, anything specific.
Q    And that is not there?
A    No.

RP at 64-65.

4

After the phone call, Detectives Todd Carlson and Berry Duty and the confidential informant arrived at Winco at 2:49 p.m. The informant exited the unmarked car near Winco.

Detective Carlson watched the confidential informant walk 300 to 500 yards from Winco towards Jack in the Box. Police Detective Christopher Lee watched the informant's conduct from an unmarked vehicle parked near Jack in the Box. Sergeant Kirk Isakson watched from inside Jack in the Box. Isakson saw the informant walk across the Jack in the Box parking lot and stop at an island. The informant waited for Thomas Hudlow on the parking lot island for less than nine minutes.

From his vantage point, Sergeant Kirk Isakson viewed a white car enter the parking lot. Isakson noticed the white car had a broken back left rear window and an exterior spare tire. Both Isakson and Detective Christopher Lee recognized the white car's driver as Thomas Hudlow.

Detectives Isakson and Lee continued their surveillance and saw the confidential informant leave the island and enter Thomas Hudlow's car. Isakson testified at trial "the CI and Mr. Hudlow looked like they were engaged in a little bit of conversation." RP at 95. Isakson further testified:

> From the chest up to the head because I could see through the front windshield and I could see the two were kind of looking down and I could see the shoulder and hand kind of like moving back and forth. All that

5

happened over a matter of seconds and then the CI ended up shaking hands and getting out and Mr. Hudlow left.

RP at 95. After a one minute interaction, the informant exited Hudlow's car and Hudlow drove from the parking lot.

Methamphetamine typically sells for $10 per decigram or 0.1 grams. The confidential informant paid $110. The substance Hudlow sold the informant weighed 1.28 grams including its packaging. Hudlow and the confidential informant shook hands during the sale, indicating agreement.

After Thomas Hudlow drove from the parking lot, Kirk Isakson and Christopher Lee watched the confidential informant walk from near Jack in the Box back to Winco. The informant returned to Detectives Carlson and Duty's unmarked car at 3:06 p.m., 17 minutes after he or she first exited the car. Upon returning to the police car, the informant gave the detectives a small bag containing 1.28 grams of methamphetamine. Todd Carlson again searched the confidential informant and did not recover the $110 earlier given to the informant.

## PROCEDURE

The State charged Thomas Hudlow with delivering a controlled substance within 1,000 feet of a school bus stop. Prior to trial, Hudlow moved to suppress Detective Todd Carlson's testimony of the confidential informant's phone call on the road to the controlled buy. The trial court declined to rule, stating, "I need to know exactly what the

6

question will be before I can rule on it." RP at 7. The confidential informant did not

testify at trial, so the participant in the conversation did not relate its content.

Jury instruction 10, given by the trial court, is critical to this appeal. The

instruction read:

> To convict the defendant of the crime of delivery of a controlled
> substance, each of the following elements of the crime must be proved
> beyond a reasonable doubt:
>
> (1) That on or about February 25, 2011 the defendant delivered a
> controlled substance;
> (2) That the defendant knew that the substance delivered was a
> controlled substance *methamphetamine*; and
> (3) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been
> proved beyond a reasonable doubt, then it will be your duty to return a
> verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a
> reasonable doubt as to any one of these elements, then it will be your duty
> to return a verdict of not guilty.

CP at 64 (emphasis added).

A jury found Hudlow guilty of delivering a controlled substance. The trial court

sentenced Hudlow to 38 months' confinement, 14 months for delivering

methamphetamine plus another 24 months as a school-zone sentence enhancement.

## LAW AND ANALYSIS

### HEARSAY

We first address the admissibility of and prejudice to Thomas Hudlow of

7

Detective Todd Carlson's testimony concerning the conversation between the confidential informant and Hudlow. The State contends that Detective Carlson overheard Hudlow speak, so a hearsay analysis is not needed. The State also contends that the testimony was admissible to show Detective Carlson's state of mind and, if erroneously admitted, harmless error. Finally, the State argues that Hudlow may not object to the testimony on appeal because his counsel failed to object at trial.

## Detective Carlson's Testimony

We encounter difficulty parsing the testimony of Detective Carlson outlined above and challenged by Thomas Hudlow. Often times, one present during testimony may understand the import of the questions and answers because of the witness' and counsel's tone of voice and mannerisms and other verbal clues, while another encounters difficulty comprehending the same testimony when reading the trial transcript. Todd Carlson overheard at least one conversation, during which the confidential informant spoke on the phone. This conversation occurred during the drive to the Jack in the Box and during which the confidential informant and Hudlow agreed to a time for the purchase. A previous conversation likely occurred during which Hudlow and the informant agreed to buy and sell methamphetamine at the Jack in the Box. We do not know if Detective Carlson overheard the informant's side of this earlier conversation. But Carlson never claimed to have heard Hudlow speak directly during any of the conversations that

8

occurred. Thus, we conclude that any understanding of Todd Carlson as to an agreement reached between Hudlow and the informant must be based upon what someone other than Hudlow said. The testimony of Carlson as to any agreement is not permissible as an admission against a party in interest under ER 801(d)(2).

## Appealability of Hearsay Error

We will address the substance of Thomas Hudlow's assignment of error, despite the State's argument that his counsel failed to object to Todd Carlson's testimony. Counsel objected twice to the testimony. Counsel first remonstrated through a pretrial motion in limine. Assuming he needed to object again because the trial court refused to rule on the motion, he objected a second time when Carlson was asked as to his understanding of the agreement. We would consider the merits of the assignment anyway, because of the constitutional nature of the assignment and the rule that manifest constitutional error may be asserted for the first time on appeal. RAP 2.5(a)(3); *State v. Neal*, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001). Also, since any failure to object was of constitutional magnitude, we would hold that any failure to object to be ineffective assistance of counsel. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 400-01, 972 P.2d 1250 (1999).

9

State Evidence Rules

We conclude Detective Todd Carlson's testimony was inadmissible hearsay. Although he testified to his understanding of the agreement between Thomas Hudlow and the confidential informant, his understanding was based upon what one or more persons, other than Hudlow, told him. Also, Detective Carlson's "understanding" was irrelevant to any issue in the prosecution.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Unless an exception or exclusion applies, hearsay is inadmissible. ER 802. The use of hearsay impinges upon a defendant's constitutional right to confront and cross-examine witnesses. *Neal*, 144 Wn.2d at 607.

The State argued to the trial court that Todd Carlson's testifying to the conversation between Thomas Hudlow and the confidential informant was not offered to prove the truth of the matter asserted but to explain how "he contacted." Thus, the State sought to introduce the testimony through ER 803(a)(3), to show the existing mental condition of Detective Carlson. We are confused as to who "he" is in the context of the prosecutor's comments. Nevertheless, we know that Todd Carlson never heard Thomas Hudlow say that he intended to sell to the informant and probably never even heard the informant agree to a purchase. Regardless, the State has not explained the relevance of

Carlson's mental condition. Whether Thomas Hudlow sold to the confidential informant was the issue at trial, and the state of mind of a law enforcement officer had no bearing on the issue. Thus, the testimony remains hearsay.

"A statement is not hearsay if it is used only to show the effect on the listener, *without regard to the truth of the statement.*" *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006) (emphasis added). Out-of- court declarations made to a law enforcement officer may be admitted to demonstrate the officer's or the declarant's state of mind only if their state of mind is relevant to a material issue in the case; otherwise, such declarations are hearsay. *State v. Johnson*, 61 Wn. App. 539, 545, 811 P.2d 687 (1991); *State v. Aaron*, 57 Wn. App. 277, 279-81, 787 P.2d 949 (1990); *State v. Stamm*, 16 Wn. App. 603, 610-12, 559 P.2d 1 (1976). Hearsay is always hearsay, but admissible hearsay, like relevance, depends on the issues in the case.

Several analogous decisions compel a conclusion that Todd Carlson's testimony was inadmissible hearsay. In *State v. Lowrie*, 14 Wn. App. 408, 542 P.2d 128 (1975), a detective testified that an informant told him the defendant was involved in the crimes that were the subject of the prosecution. Although the trial court indicated that the testimony was not admitted for the truth of the matter asserted, but only to show that the statement was made and that it in turn resulted in police action, the appellate court held the statement was inadmissible hearsay. The court reasoned that neither the making of

11

the statement by the informant nor the resultant police action was relevant to any issue in the case, except to prove the truth of the matter asserted.

In *Aaron*, 57 Wn. App. at 279-81, an officer testified to an out-of-court declaration made by a police dispatcher. The court reasoned that if the legality of the search and seizure was being challenged, the information available to the officer as the basis for his action would be relevant and material. Nevertheless, the officer's state of mind in reacting to the information he learned from the dispatcher was not at issue and did not make determination of the action more probable or less probable than it would be without the evidence.

In *Johnson*, 61 Wn. App. 539, an officer testified to information from a confidential informant recorded in a search warrant affidavit. The State argued that the lieutenant's testimony was not offered to prove the truth of the matter asserted, but only to show the officer's state of mind at the time the search warrant was executed. The defendant did not challenge the validity or execution of the search warrant, so the lieutenant's state of mind in executing it was therefore not at issue.

Most on point is *Edwards*, 131 Wn. App. at 614, in which a detective testified that he initiated his investigation of the defendant based on the statements of a confidential informant. Thus, the state argued this testimony was not offered to prove the truth of the confidential informant's statement to the detective, but only to explain why the detective

began to investigate that particular person. The *Edwards* court ruled the statement inadmissible hearsay because it was only relevant if offered for its truth, since the detective's motive for starting his investigation "was not an issue in controversy." *Edwards*, 131 Wn. App. at 614.

Todd Carlson never repeated verbatim what either the confidential informant or someone else told him. Thus, the State could argue that Detective Carlson's testimony was not hearsay since no one's statement was repeated in court. But *Johnson*, 61 Wn. App. 539, discussed above, demands an opposite conclusion.

In *Johnson*, the lieutenant did not testify to the contents of the informant's statement, but the trial court allowed testimony, based on the statement that he had reason to suspect the appellant was involved in drug trafficking. The Washington Court of Appeals noted that cases from other jurisdictions have held that a law enforcement officer's testimony concerning an informant's or eyewitness's statement is inadmissible hearsay even where the officer does not repeat the contents of the statement, but only testifies that the statement led police to investigate or arrest the defendant. *See State v. Irving*, 114 N.J. 427, 555 A.2d 575, 584-86 (1989); *State v. Hardy*, 354 N.W.2d 21, 23 (Minn. 1984); *Postell v. State*, 398 So. 2d 851, 854 (Fla. Dist. Ct. App. 1981); *Favre v. Henderson*, 464 F.2d 359 (5th Cir. 1972). The *Johnson* court held that where the inescapable inference from the testimony is that a nontestifying witness has furnished the

13

police with evidence of the defendant's guilt, the testimony is hearsay, notwithstanding that the actual statements made by the nontestifying witness are not repeated. *Johnson*, 61 Wn. App. at 547.

Detective Carlson's testimony is hearsay if offered to prove that the confidential informant and Thomas Hudlow arranged to meet at the Jack in the Box for Hudlow to sell the informant methamphetamine at about 2:30 p.m., on February 25. The State argues that many of these details are unimportant and "what is important is that [Hudlow] confirmed that he was coming to meet the confidential informant for the drug deal, a fact directly heard by Detective Carlson." Br. of Resp't at 6. We question whether Carlson even heard what the confidential informant said, but he never heard what Hudlow said. By its argument, the State impliedly concedes that Carlson's testimony is relevant only if offered to prove Hudlow planned to sell the illicit drugs and that Detective Carlson learned these facts by hearing the informant's out-of-court statements. While the State rephrased its questions to avoid direct quotations from the informant, Carlson's testimony still only echoed what he may have heard the informant utter. "Inadmissible evidence is not made admissible by allowing the substance of a testifying witness's evidence to incorporate out of court statements by a declarant who does not testify." *State v. Martinez*, 105 Wn. App. 775, 782, 20 P.3d 1062 (2001), *overruled on other grounds by State v. Rangel-Reyes*, 119 Wn. App. 494, 499 n.1, 81 P.3d 157 (2003). The State

14

offered the informant's out-of-court statements, through Carlson's testimony, for no other purpose than to show that Hudlow and the informant agreed to meet for Hudlow to sell the confidential informant methamphetamine.

This court reviews many evidentiary decisions for manifest abuse of discretion. *State v. Bourgeois*, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997). Nevertheless, this court reviews whether or not a statement was hearsay de novo. *Neal*, 144 Wn.2d at 607. We conclude that Todd Carlson's testimony was inadmissible as hearsay under Washington evidence rules. To assess the scope of this error, and determine which harmless error analysis should apply, we reach Thomas Hudlow's assertion that the testimony's admission also violated his rights under the confrontation clause.

Confrontation Clause and Testimonial Hearsay

In addition to violating the hearsay rule, the testimony of Detective Carlson violated the constitutional confrontation clause. This court also reviews de novo "an alleged violation of the confrontation clause." *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). Under the Sixth Amendment's confrontation clause, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Even hearsay with an applicable exception becomes inadmissible in violation of the clause if it is *testimonial* hearsay. *Davis v. Wash.*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

A declarant's out-of-court statement is testimonial if, in the absence of an ongoing emergency, "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. The admission of testimonial hearsay statements of a witness who does not appear at a criminal trial violates the confrontation clause of the Sixth Amendment unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross-examination. *Crawford v. Wash.*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Beadle*, 173 Wn.2d 97, 107, 265 P.3d 863 (2011); 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 1300.8, at 498 (5th ed. 2007).

Before addressing the two exceptions permitting introduction of testimonial hearsay, we must first determine if the confidential informant's remarks sought to be introduced were "testimonial." *Crawford*, the leading United States Supreme Court decision on the subject, did not comprehensively define "testimonial," but it provided some guidance to lower courts. *State v. Chambers*, 134 Wn. App. 853, 860, 142 P.3d 668 (2006). *Crawford*'s few definitions of "testimonial" all contemplate formal statements given to police to help their investigations or formal testimony in a court setting. *See Crawford*, 541 U.S. at 51-52. *Crawford* specifically distinguished these formal statements from casual remarks. *Chambers*, 134 Wn. App. at 862.

In *Chambers*, our court summarized three nonexclusive definitions for

"testimonial" offered by *Crawford*:

> (1) ex parte in-court testimony or its functional equivalent, such as
> affidavits, custodial examinations, and prior testimony that the defendant
> was unable to cross-examine; (2) extrajudicial statements contained in
> formalized testimonial materials, such as affidavits, depositions, prior
> testimony, or confessions; and (3) statements made under circumstances
> that would lead an objective witness reasonably to believe that the
> statement would be available for use at a later trial.

*Chambers*, 134 Wn. App. at 860-61 (citing *Crawford*, 541 U.S. at 51-52). We find that

the third definition applies in this appeal. Under the circumstances of a controlled buy, a

reasonable confidential informant would believe his or her statement would further police

investigations towards future criminal prosecutions and specifically that such statements

"would be available for use at a later trial." *Chambers*, 134 Wn. App. at 861.

*Chambers*, despite the opposite outcome, is illustrative. William Chambers

purchased methamphetamine through an intermediary. Chambers, with his friend Jeremy

Drouin, drove to a known methamphetamine dealer's home for Chambers to purchase

drugs. Fortuitously, undercover officers were present at the home executing a search

warrant, by which they had confiscated methamphetamine. Chambers sent Drouin to the

home's front door, as Chambers sat in his car. An enterprising officer answered the door

and asked Drouin whether he "had the money." Drouin replied that he "had the money,"

and asked how much "it was?" The inventive officer said a "teener" cost $80, and

17

Drouin walked back to the van. Drouin obtained the purchase price from Chambers and returned to the home's front door to finalize the transaction.

On appeal, Chambers asserted his confrontational clause rights were violated when the State introduced, through the undercover officer, the remarks made by Jeremy Drouin to the officer. Our court rejected the argument since the hearsay was not "testimonial" in nature. Drouin did not know he spoke to a law enforcement officer. Thus, he had no expectation that his comments would be used to further a criminal investigation. Contrary to the *Chambers* facts, the out of court statement to Detective Todd Carlson was from a confidential informant who knew he was participating in a criminal investigation. An informant knows or should know that anything he or she says can and will be used against the target of the controlled buy.

Since we conclude the hearsay on appeal is testimonial hearsay, we must complete the confrontational clause analysis. The State has not shown that the confidential informant was unavailable to testify at trial. Also, Thomas Hudlow had no prior opportunity to cross-examine the informant. Thus, the trial court admitted testimonial hearsay in violation of Hudlow's right to confront witnesses against him.

Harmless Error Analysis

Since we rule that Detective Carlson's testimony was inadmissible, we must next decide if the error in admitting the testimony was harmless or prejudicial. The admission

18

of the evidence raises confrontation clause concerns. *See, generally, Crawford*, 541 U.S. 36. A constitutional error is harmless if the appellate court is assured beyond a reasonable doubt that the jury verdict is unattributable to the error. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011). This court employs the "'overwhelming untainted evidence'" test and looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Anderson*, 171 Wn.2d at 770 (quoting *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985)).

Thomas Hudlow argues that the State did not prove beyond a reasonable doubt that he knew the substance he delivered to the confidential informant was methamphetamine. He also contends that, because jury instruction 10 specified that the jury must find he delivered methamphetamine, the State, under the law of the case doctrine, needed to prove beyond a reasonable doubt that he specifically knew the substance he delivered was methamphetamine. According to Hudlow, if we exclude the testimonial hearsay from Detective Carlson, the State's remaining evidence only shows that the confidential informant made a call, Hudlow parked near Jack in the Box, and the informant gave police a package containing methamphetamine. Hudlow contends this evidence does not support a finding beyond a reasonable doubt that he knew the package contained methamphetamine. We agree.

19

Ordinarily, to be guilty of delivery of a controlled substance, the accused need only know that the substance was a controlled substance. *State v. Nunez-Martinez*, 90 Wn. App. 250, 255-56, 951 P.2d 823 (1998). He need not know the nature of the forbidden substance. If this general rule controlled our decision, we would hold that the hearsay testimony from Detective Todd Carlson was harmless. But under the law of the case doctrine, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). In turn, on appeal, a defendant may challenge the sufficiency of evidence of an element in the "to convict" instruction, even if that element is not part of the underlying statute. *Hickman*, 135 Wn.2d at 102; *State v. Ong*, 88 Wn. App. 572, 577-78, 945 P.2d 749 (1997).

Here, the trial court instructed the jury, without objection, that to convict Thomas Hudlow it must find "[t]hat the defendant knew that the substance delivered was a controlled substance methamphetamine." CP at 64. Thus, the State assumed the burden of proving Hudlow specifically knew the substance he delivered was methamphetamine.

Hudlow likens this case to *Ong*. In *Ong*, the State accused Steven Ong of giving a morphine tablet to a child. Like here, the law of the case doctrine operated to require the state to prove Ong knew the tablet was morphine. The State presented evidence of, (1) Ong's five felony convictions; (2) Ong's drug paraphernalia of syringes, a straw,

20

smoking device, and cotton; (3) the small numbers marked on the tablets; (4) his testimony that he knew the pills were "pain medication"; (5) his testimony that he stole the pills; and (6) his flight to Bremerton, showing consciousness of guilt. But nothing in this evidence pointed to knowledge that the substance was morphine rather than any other controlled substance. Thus, even viewing this evidence in a light most favorable to the state, it was insufficient to support Ong's conviction for delivery of a controlled substance. *Ong*, 88 Wn. App. at 577-78.

The State argues that specific criminal intent may be inferred where a defendant's conduct plainly indicates the requisite intent as a matter of logical probability, citing *State v. Stearns*, 61 Wn. App. 224, 229, 810 P.2d 41 (1991). The State points to Thomas Hudlow's behavior, the location and duration of the meeting, the confidential informant's acquisition of methamphetamine, and the informant's loss of buy funds to show Hudlow knew he had methamphetamine. But like *Ong*, this evidence only shows that Hudlow intentionally sold methamphetamine. The evidence does not point to knowledge that the substance was methamphetamine rather than any other controlled substance. The only evidence that directly ties Thomas Hudlow to knowledge of methamphetamine is the testimony of Detective Todd Carlson's understanding that the confidential informant and Thomas Hudlow agreed to buy and sell the specific illicit item. Therefore, Carlson's testimony was both violative of Hudlow's right to confront witnesses and harmful.

21

No. 31027-2-III
*State v. Hudlow*

SUFFICIENCY OF EVIDENCE

Although we rule that the untainted evidence was not strong enough to overcome the harmless error analysis, we disagree with Thomas Hudlow that the evidence, after excluding the inadmissible hearsay, was not sufficient to convict him. Therefore, we remand for a new trial, rather than dismiss the prosecution.

Evidence is sufficient to support a jury's verdict if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). This standard is nearly the reverse of the constitutional harmless error standard. We may not consider, however, inadmissible hearsay when determining whether the trial testimony is sufficient for a conviction. *State v. Nation*, 110 Wn. App. 651, 666, 41 P.3d 1204 (2002); *State v. Lewis*, 04-1074 (La. App. 5 Cir. 10/06/05); 916 So. 2d 294); *McCrary v. State*, 124 Ga. App. 649, 185 S.E.2d 586, 587 (1971).

The jury convicted Thomas Hudlow of delivering methamphetamine in violation of RCW 69.50.401(1)(2)(b), which reads:

> [I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
> Any person who violates this section with respect to . . .
> methamphetamine, including its salts, isomers, and salts of isomers, is guilty of a class B felony.

22

Thomas Hudlow claims that *State v. Mace*, 97 Wn.2d 840, 842-43, 650 P.2d 217 (1982), requires dismissal of the delivery charge since the State presented no direct evidence that he knew he delivered methamphetamine. In *Mace*, the State charged Mace with burglary for entering a home and stealing bank cards. The State presented evidence that police found a receipt and bag that bore Mace's fingerprints near a cash machine where the stolen bank cards were used, but no evidence connected Mace to the burgled home. While this evidence likely sufficed to show receipt of stolen property, the court held it was insufficient to support the burglary conviction, noting "[t]here was no direct evidence, only inferences, that he had committed second degree burglary by entering the premises in Richland." *Mace*, 97 Wn.2d at 843.

*Mace* is based upon the rule that proof of possession of recently stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary. Thus, its requirement of direct proof does not fit a prosecution for delivery of controlled substances.

To sustain charges of delivery of a controlled substance, the State need not present direct evidence. "The elements of a crime may be established by either direct or circumstantial evidence, and one type of evidence is no more or less trustworthy than the other." *Rangel-Reyes*, 119 Wn. App. at 499; *Green*, 94 Wn.2d at 220. Circumstantial evidence in this case showed Hudlow knew he delivered methamphetamine.

23

The strongest evidence of knowledge is the price Thomas Hudlow accepted in exchange for the small package. Detective Carlson testified methamphetamine typically sells for $10 per decigram (0.1 grams), and, for the controlled buy, Carlson handed the confidential informant $110. The substance Hudlow sold the informant weighed 1.28 grams including its packaging. Hudlow and the informant shook hands indicating agreement. Based on Hudlow accepting a price suitable for the amount of methamphetamine sold, the jury could reasonably infer that Hudlow knew the substance delivered was methamphetamine.

Thomas Hudlow also claims an insufficiency of evidence showing he gave the methamphetamine to the confidential informant. Substantial evidence shows to the contrary. Detective Carlson searched the confidential informant, before the drive to Winco, and watched him or her walk from Winco towards Jack in the Box. Detective Lee parked in between Winco and Jack in the Box. From there, Lee also watched the informant walk from Winco towards Jack in the Box to arrive at the parking lot island where the informant met Hudlow. Between Detectives Carlson and Lee, the confidential informant was always in sight. After being searched, the informant had no opportunity to recover previously hidden drugs.

Both Detectives Kirk Isakson and Christopher Lee saw the confidential informant leave the island and enter Thomas Hudlow's car. Both detectives identified Hudlow as

24

the car's driver. Isakson saw Hudlow and the informant exchange small items, but could not see what they exchanged. Hudlow and the informant shook hands, the informant exited Hudlow's car, and then Hudlow drove away. Isakson and Lee watched the confidential informant walk from Jack in the Box back towards Winco. The confidential informant had no opportunity to obtain the methamphetamine from any other source than Hudlow.

The informant returned to Detectives Carlson and Duty and gave them the small package containing methamphetamine. Carlson again searched the informant and did not recover the $110. While no witness testified he or she directly saw Hudlow sell the confidential informant methamphetamine, the circumstantial evidence is overwhelming.

## OTHER ASSIGNMENTS OF ERROR

Thomas Hudlow also argues the prosecution engaged in misconduct during the closing argument and that the trial court erroneously imposed legal financial obligations and community custody requirements upon him. Because we reverse on other grounds, we do not address the purported misconduct. Because we remand for a new trial, we do not address any sentencing errors.

## CONCLUSION

Sufficient evidence, unrelated to the impermissible hearsay, supports the jury's verdict, but this evidence is not overwhelming. Therefore, the admission of testimonial

No. 31027-2-III
*State v. Hudlow*

hearsay was harmful. Based on the evidentiary error, we reverse and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, C.J.

26