# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49882-1-II |
| Respondent, | |
| v. | |
| ADRIAN TROY ABRAM, III, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Adrian Troy Abram III appeals his convictions for attempting to elude a police vehicle and first degree driving while license suspended or revoked. First, Abram argues that the trial court erred by giving an expert witness instruction. Second, Abram argues that the trial court erred by admitting evidence of Abram's outstanding warrant as a motive for eluding. Third, Abram argues that the trial court erred by allowing the State to elicit inadmissible hearsay statements from a witness. Fourth, Abram argues that the prosecutor committed misconduct by impermissibly commenting on his right to remain silent.

First, we hold that the trial court did not err by giving the expert witness instruction. Second, we hold that the trial court did err by admitting evidence of Abram's outstanding warrant, but that this error was harmless. Third, we hold that the trial court erred by admitting the hearsay statements by the witness, but that Abram was not prejudiced by their admission. Fourth, we hold that the prosecutor did not impermissibly comment on Abram's right to remain silent, and thus, his claim of prosecutor misconduct fails. Thus, we affirm.

FACTS

I. PRETRIAL FACTS

On January 2, 2016, Abram was arrested after a high speed chase with two deputies, Deputy James Maas and Deputy Tommie Nicodemus. Abram was subsequently charged with attempting to elude a police vehicle and first degree driving while license suspended or revoked.

Before trial, the State informed the trial court of a potential ER 404(b) issue and advised the trial court that it intended to introduce evidence that Abram had an outstanding warrant when he was pulled over by the deputies. Abram objected to this evidence on the grounds that the evidence was not relevant. The trial court disagreed and ruled,

> Well, I do find that it is relevant. . . . The relevance is to show what may have been the mindset of Mr. Abram at the time that the officers were behind him, the fact he had an outstanding warrant.
>
> The prejudicial effect of that can be substantial if the jury hears that he has a warrant. But I think that can be limited by having it be described as a misdemeanor warrant rather than a felony warrant and not going into the nature of it being a reckless driving warrant. So that could be an outstanding misdemeanor warrant I think is accurate. I think that minimizes the prejudice to therefore the probative value of it. The relevance of it is not substantially outweighed by the danger of unfair prejudice. I will allow the admissibility of the fact that he had an outstanding misdemeanor warrant.

IV Verbatim Report of Proceedings (VRP) at 173. On January 4, 2017, Abram's jury trial began.

II. TESTIMONY

Deputy Maas and Deputy Nicodemus testified at trial. Deputy Maas testified that he completed the law enforcement academy, worked for several months with a field officer, and completed the Pierce County Sheriff's Department internal education requirements. He began his career as a corrections deputy for Pierce County in 1996, and then worked as a patrol deputy since

2007. As a patrol deputy, his main job is to respond to 911 calls and to work in traffic enforcement. He explained that his training at the academy included training on the traffic rules and laws, safe motor vehicle operations, how to drive a patrol vehicle, and pursuits.

Deputy Nicodemus testified that he worked for the Pierce County Sheriff's Department since 1998, first as a corrections deputy and then as a patrol deputy. He testified that he completed the law enforcement academy and field training. He has worked as a firearms instructor and as a field training officer. Deputy Nicodemus also stated that he has worked in search and rescue, marine services, the domestic violence unit, and as an investigator for Pierce Transit.

On January 2, 2016, Deputy Maas was riding with Deputy Nicodemus on patrol duty. Their vehicle was a fully marked police vehicle with lights and sirens. Maas witnessed a black Jeep drive past them with no front license plate. The deputies began to follow the Jeep.

Once the deputies began to follow the Jeep, it accelerated and quickly turned down a side street. The deputies continued to pursue the Jeep down residential streets, as it accelerated to high speeds and ran through red lights and intersections. At this point, the deputies activated their emergency lights and notified dispatch that they were in pursuit of the Jeep. They then turned on the siren and continued to pursue the Jeep.

Both deputies testified that the Jeep was often driving at double the posted speed limit down residential streets and side streets, and driving 70 miles per hour through a four way stop and a second stop sign. The Jeep did not stop or slow down at any stop signs, red lights, or intersections. The deputies testified that once the Jeep turned onto the freeway, the Jeep exceeded 100 miles per hour. Eventually, the deputies used their vehicle to nudge the Jeep, forcing it to spin out and stop. Once the Jeep was stopped, the deputies contacted the occupants of the Jeep. The

Jeep's driver was Abram, the two passengers were Abram's girlfriend, Armita Sandoval, and their three-year-old son.

During direct examination, Deputy Maas testified about conversations that he had with Sandoval and Abram at the scene of the traffic stop:

> [State]: Did you ask [Sandoval] about whether she observed police cars behind her?
> [Deputy Maas]: Yes.
> [State]: And what did she say?
>> [Defense Counsel]: I'm going to object, Your Honor.
>> The Court: Basis?
>> [Defense Counsel]: Hearsay.
>> The Court: Overruled.
> [Deputy Maas]: She stated that she knew that -- every time I would ask her a question, she would not answer it.
> . . . .
> [State]: Were there ever any cars between you and [Abram] during the majority of this pursuit?
> [Deputy Maas]: No.
> [State]: Did you challenge [Abram] about that?
> [Deputy Maas]: Yes. He just said he thought there was [sic] other cars; thought we were chasing the car chasing him and that guy just happened to take every turn and every direction that he took.
> [State]: Did you ever confront [Abram] about how close you were and there being no car between you?
> [Deputy Maas] Yes. And he would just decline to answer those ones.
> [State]: And did you ask [Abram] if he knew it was [the] police behind him?
> [Deputy Maas]: Yes.
> [State]: What did [Abram] say?
> [Deputy Maas]: He said he knew there were police behind him, but he thought we were trying to stop the other car.
> [State]: And I want to go back to [Sandoval]. Did she ever answer any of your questions initially?
> [Deputy Maas]: Initially she stated that they were at Safeway. He told her that he got in an argument with somebody; and when they left Safeway, we got behind him.

4

[State]: Did she ever mention there being another vehicle pursuing them besides you?

[Deputy Maas]: No.

IV VRP at 221-23.

Deputy Maas further testified that Abram said that while he and Sandoval were at a Safeway, Abram got into an altercation with a person. After leaving the store, when the deputies got behind him in his Jeep, he thought they were trying to stop the person who Abram had had the altercation with. Abram told the deputies that he believed they were attempting to pull over the person who was following him. Both deputies testified that no other vehicle was between Abram's vehicle and their vehicle.

During redirect, Deputy Maas was again asked about his interaction with Sandoval:

[State]: The defense just asked you about the passenger, [Sandoval]. In your report, did you -- well, let me ask . . . [d]id you ask her about whether she knew that there was a police car behind them?

[Deputy Maas]: Yes.

[State]: So I mean, if you can kind of look at your report and refresh your memory, to the best of your recollection, what exactly did she say about that?

[Deputy Maas]: She stated that -- basically all she would say is that once they left Safeway, we got behind them and he just didn't stop when we turned our lights on.

V VRP at 261.

Both Deputy Maas and Deputy Nicodemus testified that Abram was driving in such a manner and speed in an attempt to elude them. V VRP at 236, 273. Deputy Maas stated:

[State]: Why would somebody turn their lights off during a pursuit, in your experience?

[Deputy Maas]: My only thought for them to do be doing that would be hoping that it would make it so we would lose sight of them or quit chasing them.

[State]: Does that increase the amount of danger of a collision with other vehicles when they turn their lights off?

[Deputy Maas]: Yes[.]

5

V VRP at 236. Deputy Nicodemus also opined that "[Abram] was definitely trying to avoid me" and that despite the lack of pedestrian or vehicular traffic, Abram was not safely clearing intersections. V VRP at 273.

Both Sandoval and Abram testified. Sandoval denied telling the deputies anything related to Abram's driving. Abram denied being aware that the deputies were behind him until they forced him to stop the vehicle.

### III. JURY INSTRUCTIONS

Over Abram's objection, the trial court gave the pattern jury instruction on expert testimony, ruling:

> I will include the [expert testimony] instruction. I think that it may provide some information to the jury. While lay witnesses can testify about speed, I think that there's some additional experience and training that law enforcement officers have in regard[] to these situations. So I will give that instruction.

VI VRP at 371.

The trial court instructed the jury as follows:

> A witness who has special training, education, or experience may be allowed to express an opinion in addition to giving testimony as to facts.
>
> You are not, however, required to accept his or her opinion. To determine the credibility and weight to be given to this type of evidence, you may consider, among other things, the education, training, experience, knowledge, and ability of the witness. You may also consider the reasons given for the opinion and the sources of his or her information, as well as considering the factors already given to you for evaluating the testimony of any other witness.

Clerk's Papers (CP) at 25; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.51, at 211 (4th ed. 2016) (WPIC).

The trial court also instructed the jury that to find Abram guilty of attempting to elude a police vehicle, they must find that "he willfully fail[ed] or refus[ed] to bring his vehicle to a stop after being given a visual or audible signal to bring the vehicle to a stop by a police officer, and while attempting to elude a pursuing police vehicle [he drove] his vehicle in a reckless manner." CP at 27; RCW 46.61.024.

Abram was convicted of attempting to elude a police vehicle and driving while license revoked in the first degree. He appeals his convictions.

ANALYSIS

I. JURY INSTRUCTIONS

Abram argues that the trial court erred by instructing the jury on expert witness testimony because the two deputies who testified did not qualify as expert witnesses.[1] We disagree.

A. LEGAL PRINCIPLES

We review legal errors in jury instructions de novo. *State v. Jensen*, 149 Wn. App. 393, 398, 203 P.3d 393 (2009). However, absent a legal error, we review a trial court's decision regarding the specific language of an instruction and a trial court's decision to give an instruction for an abuse of discretion. *Jensen*, 149 Wn. App. at 399. An abuse of discretion exists when a trial court's exercise of its discretion is based upon untenable grounds or reasons; a decision is based on untenable reasons if it is based on an incorrect standard. *State v. Quaale*, 182 Wn.2d 191, 196-97, 340 P.3d 213 (2014).

---

[1] Abram also argues that neither deputy presented any evidence that their speedometer was properly calibrated that night. This argument goes to the admissibility of the testimony given by the deputies regarding Abram's speed. Because this testimony was not objected to, we do not consider this argument. *State v. Perez-Cervantes*, 141 Wn.2d 468, 482, 6 P.3d 1160 (2000).

A trial court has discretion to determine whether a witness is an expert in a particular subject. ER 702. Under ER 702, a witness may be qualified as an expert by his knowledge, skill, experience, training, or education. *State v. Cheatam*, 150 Wn.2d 626, 645, 81 P.3d 830 (2003). When considering the admissibility of expert testimony under ER 702, we engage in a two-part inquiry: (1) does the witness qualify as an expert, and (2) would the witness's testimony be helpful to the trier of fact. *State v. Yates*, 161 Wn.2d 714, 762, 168 P.3d 359 (2007). Practical experience is sufficient to qualify a witness as an expert. *Yates*, 161 Wn.2d 765.

B. JURY INSTRUCTION

The trial court's to convict instruction for attempting to elude a police vehicle stated, "[a] person commits the crime of attempting to elude a police vehicle when he willfully fails or refuses to bring his vehicle to a stop after being given a visual or audible signal to bring the vehicle to a stop by a police officer, and while attempting to elude a pursuing police vehicle he drives his vehicle in a reckless manner." CP at 27; RCW 46.61.024. The court's instruction defined "reckless manner" as "a rash or heedless manner, indifferent to the consequences." CP at 31.

Because the trial court's expert witness instruction, WPIC 6.51, is a legally correct statement of the law, we review the court's decision to give the expert witness instruction for an abuse of discretion. *Jensen*, 149 Wn. App. at 399.

Here, the deputies testified about their extensive training and experience related to their jobs as patrol deputies in traffic enforcement, including safe motor vehicle operations during pursuits. Both deputies testified about the Jeep's excessive speed during their pursuit of it. They testified that the Jeep was often driving at double the posted speed limit while driving on residential streets and side streets, including driving 60 miles per hour on residential streets with posted speed

limits of 25 and 35, and driving 70 miles per hour through a four way stop sign and a second stop sign. Once the Jeep turned onto the freeway, the Jeep exceeded 100 miles per hour on a roadway with a posted speed limit of 60 miles per hour. They opined that the speed the Jeep was travelling at was unsafe, particularly as it sped through stop signs, red lights, and intersections without slowing down. The deputies also opined that Abram was driving that night in such a manner as to elude them. Abram did not object at trial to the testimony of the deputies or to their qualifications.

Abram did object to the proposed expert witness instruction, arguing that neither deputy was an expert. The trial court ruled,

> I will include the [WPIC] 6.51 instruction. I think that it may provide some information to the jury. While lay witnesses can testify about speed, I think that there's some additional experience and training that law enforcement officers have in regard[] to these situations. So I will give that instruction.

VI VRP at 371. The trial court acknowledged that the testimony of the deputies regarding Abram's speed was lay opinion testimony.

The trial court correctly ruled that the deputies' practical experience and training in traffic patrol duties, safe motor vehicle operations, and pursuit driving qualified them to state their opinions as to the speed and manner of Abram's driving during their pursuit of his vehicle. The trial court also correctly ruled that the deputies' opinions on the subject would be helpful to the jury. Thus, the trial court had a tenable reason to give the expert witness instruction. Because the

trial court had a tenable reason, it did not abuse its discretion. Because the trial court did not abuse its discretion, it did not err. Therefore, Abram's argument fails.[2]

## II. EVIDENCE OF THE OUTSTANDING WARRANT

Abram argues that the trial court erred by admitting evidence of an outstanding warrant as a motive to elude. Specifically, Abram argues that the trial court abused its discretion in finding that the outstanding warrant was sufficiently probative because the State was required to prove that he was aware of the warrant at the time the deputies pulled him over. We agree with Abram that the trial court abused its discretion by admitting evidence of an outstanding warrant because the prejudice of the evidence substantially outweighed its probative value. However, because the outcome of the trial would not have been materially affected had the erroneous admission of the evidence of the warrant not occurred, the error was harmless.

### A. LEGAL PRINCIPLES

We review a trial court's interpretation of ER 404(b) de novo. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). If the trial court interprets ER 404(b) correctly, we review the trial court's ruling to admit evidence for an abuse of discretion. *Gunderson*, 181 Wn.2d at 922. An abuse of discretion exists when a trial court's exercise of its discretion is based upon untenable grounds or reasons; a decision is based on untenable reasons if it is based on an incorrect standard. *Quaale*, 182 Wn.2d at 196-97. Here, Abram does not argue that the trial court interpreted ER 404(b) incorrectly, but argues that the trial court abused its discretion.

---

[2] Abram also argues that this instruction prejudiced him because it gave undue deference to the testimony of the deputies. But the instruction given was proper and it did not accord undue deference to the testimony of the deputies, and thus, we do not need to address the issue of prejudice.

Generally, evidence of a defendant's prior bad acts is inadmissible to demonstrate the accused's propensity to commit the crime charged. ER 404(b); *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009). However, ER 404(b) allows the introduction of prior bad acts for other purposes, including to demonstrate motive or intent. *Fisher*, 165 Wn.2d at 744. Further, we read ER 404(b) in conjunction with ER 403. *State v. Mee*, 168 Wn. App. 144, 154, 275 P.3d 1192 (2012). ER 403 requires the trial court to exercise its discretion by excluding relevant evidence that would be unfairly prejudicial.

Prior to the admission of ER 404(b) evidence, the trial court, on the record, must: (1) find by a preponderance of the evidence that the bad act actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence. *Gunderson*, 181 Wn.2d at 923. Doubtful cases must be resolved in favor of exclusion. *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

It is well settled that the erroneous admission of evidence in violation of ER 404(b) is analyzed under the lesser standard for nonconstitutional error. *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012). The nonconstitutional error standard requires that we determine whether, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *Gresham*, 173 Wn.2d at 433 (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

B.  ERRONEOUS ADMISSION

Here, the State was required to prove that Abram willfully failed to stop when the pursuing deputies signaled him to stop. RCW 46.61.024(1). The State argued that the evidence of the

outstanding warrant was admissible to show Abram's motive for evading the deputies.  The State argued that the evidence of the warrant was highly probative of Abram's willful failure to stop and that it could be reasonably inferred that he was afraid to stop because he believed that he would be arrested for a reason unrelated to the traffic stop.  Prior to admitting testimony about the outstanding warrant, the trial court heard the parties' arguments and then conducted a balancing test to weigh the probative value and the prejudicial effect under ER 401 and ER 403.

However, no evidence was admitted at trial showing that Abram was aware of the warrant. Because there was no evidence that Abram had any knowledge of the outstanding misdemeanor warrant, the evidence of the warrant did not establish that he had a motive which caused him to act.  *See* ER 404(b).  Without a showing that the warrant could have provided any such motive, the evidence about the outstanding warrant did not have any probative value.  Thus, the absence of any probative value was substantially outweighed by the prejudicial effect from the admission of the outstanding warrant.  Consequently, because the probative value was outweighed by the prejudice, the trial court abused its discretion in admitting the evidence of the outstanding warrant.

Regardless, the error was harmless.  The deputies were eyewitnesses to the incident and they testified to Abram's conduct during their pursuit of his vehicle.  Further, Abram testified that he was speeding, but explained that he was not fleeing from the deputies; rather, he was fleeing from the person he believed was chasing him.  Thus, within reasonable probabilities, the outcome of the trial was not materially affected by the erroneous admission of the evidence which, in turn, means that the error was harmless.  *Gresham*, 173 Wn.2d at 433.  Because the error was harmless, Abram's claim fails.

## III. HEARSAY STATEMENTS

Abram next argues that (1) the trial court erred by admitting hearsay statements made by Sandoval at the scene of the traffic stop to Deputy Maas because her statements were offered to prove the truth of the matter asserted—that Abram was eluding the deputies and (2) the erroneous admission of the hearsay statements forced him to call Sandoval as a witness to rebut her hearsay statements, which prejudiced him. The State argues that Abram did not preserve the hearsay objection he now complains of on appeal. We hold that Abram sufficiently preserved the hearsay objections, and we agree that the trial court erred in admitting Sandoval's hearsay statements. However, we disagree that Abram suffered any prejudice. Thus, his claim fails.

### A. LEGAL PRINCIPLES

Under ER 801(c), "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Unless an exception or exclusion applies, hearsay is inadmissible." *State v. Hudlow*, 182 Wn. App. 266, 278, 331 P.3d 90 (2014); ER 802. We review de novo whether a statement is hearsay. *Hudlow*, 182 Wn. App. at 281. We review the admission of evidence under a hearsay exception for an abuse of discretion. *State v. Thomas*, 150 Wn.2d 821, 854, 83 P.3d 970 (2004). We will not disturb a trial court's ruling that a statement falls under a hearsay exception unless we believe that no reasonable judge would have made the same ruling. *Thomas*, 150 Wn.2d at 854. Improper admission of hearsay is harmless if, within reasonable probability, the statement did not materially affect the outcome of the trial. *See State v. Stenson,* 132 Wn.2d 668, 709, 940 P.2d 1239 (1997).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The

confrontation clause bars the "'admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *State v. Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009) (internal quotation marks omitted) (quoting *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

B.  PRESERVATION FOR APPEAL

Preliminarily, the State argues that Abram did not object to the same hearsay statements by Sandoval that he now challenges on appeal. However, our review of the record reveals that Abram preserved the issue for our review and we address the merits of his claim.

C.  SANDOVAL'S HEARSAY STATEMENTS

Abram argues that the trial court erred by allowing the State to elicit hearsay statements by Sandoval at the scene of the traffic stop during Deputy Maas's testimony. We agree with Abram that the trial court erred, but we hold that Abram fails to show prejudice.

Deputy Maas testified that Sandoval told him at the scene of the traffic stop that when she and Abram were at Safeway, Abram told her he got into an argument with another person and when they left the store, "we got behind him"; she did not tell Deputy Maas that there was another vehicle pursuing them. IV VRP at 223.

Deputy Maas testified in relevant part:

[State]: Did you ask [Sandoval] about whether she observed police cars behind her?
[Deputy Maas]: Yes.
[State]:  And what did she say?
        [Defense Counsel]:  I'm going to object, Your Honor.
        [The Court]:  Basis?

14

> [Defense Counsel]:  Hearsay.
>
> [The Court]: Overruled.

[Deputy Maas]:  She stated that she knew that -- every time I would ask her a question, she would not answer it.

IV VRP at 221.

The State then elicited further statements about Sandoval's statements to Deputy Maas at the scene:

> [State]:  And did you ask [Abram] if he knew it was [the] police behind him?
>
> [Deputy Maas]:  Yes.
>
> [State]:  What did [Abram] say?
>
> [Deputy Maas]: He said he knew there were police behind him, but he thought we were trying to stop the other car.
>
> [State]:  And I want to go back to [Sandoval]. Did she ever answer any of your questions initially?
>
> [Deputy Maas]:  Initially she stated that they were at Safeway. He told her that he got in an argument with somebody; and when they left Safeway, we got behind him.
>
> [State]:  Did she ever mention there being another vehicle pursuing them besides you?
>
> [Deputy Maas]:  No.

IV VRP at 223.

Additionally, Deputy Maas testified as follows:

> [State]: The defense just asked you about the passenger, [Sandoval].  In your report, did you -- well, let me ask . . . [d]id you ask her about whether she knew that there was a police car behind them?
>
> [Deputy Maas]:  Yes.
>
> [State]:  So I mean, if you can kind of look at your report and refresh your memory, to the best of your recollection, what exactly did she say about that?
>
> [Deputy Maas]:  She stated that -- basically all she would say is that once they left Safeway, we got behind them and he just didn't stop when we turned our lights on.

V VRP at 261.

Abram argues that all of the statements that Deputy Maas attributed to Sandoval were hearsay under ER 801(c) because they were offered and admitted to prove the truth of the matter asserted—that Abram was eluding the deputies. We agree that the statements are hearsay because they were offered to prove the truth of the matter asserted. Because we determined that the trial court erred by admitting the hearsay statements by Sandoval, we next determine whether Abram was prejudiced by their admission.

D. PREJUDICE

Abram argues that being forced to call Sandoval as a witness to rebut the inadmissible hearsay statements was prejudicial, and was not harmless error. Abram cites no authority to support his claim that being forced to call a witness is prejudicial. Prejudice is evidenced by a showing that the court's error in admitting the inadmissible hearsay materially affected the outcome of the trial.[3] *See Stenson*, 132 Wn.2d at 709. There is no showing of prejudice here, and this claim fails.

IV. COMMENT ON ABRAM'S RIGHT TO REMAIN SILENT

Lastly, Abram argues that the State wrongfully elicited evidence from Deputy Maas that Abram invoked his right to remain silent. We disagree.

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Article

---

[3] Abram also argues that his right of confrontation was violated because the hearsay statements by Sandoval were testimonial and he could not cross-examine her. Br. of App. at 20-21. However, Abram was able to cross-examine Sandoval, his right of confrontation was not violated. VI VRP at 328-32. Thus, this claim fails.

I, section 9 of the Washington Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." CONST. art. 1, § 9. Both provisions guarantee a defendant the right to be free from compelled self-incrimination, including a right to remain silent. *State v. Knapp,* 148 Wn. App. 414, 420, 199 P.3d 505 (2009).

When the defendant's right to remain silent is raised, we must consider "whether the prosecutor manifestly intended the remarks to be a comment on that right." *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991). The *Crane* court noted that a prosecutor's statement will not be considered a comment on a constitutional right to remain silent if "standing alone, [it] was 'so subtle and so brief that [it] did not naturally and necessarily emphasize defendant's testimonial silence.'" *Crane*, 116 Wn.2d at 331 (alterations in original) (internal quotation marks omitted) (quoting *State v. Crawford*, 21 Wn. App. 146, 152, 584 P.2d 442 (1978)). A remark that does not amount to a comment on a criminal defendant's right to remain silent is considered a "mere reference" to silence and is not reversible error absent a showing of prejudice. *State v. Lewis*, 130 Wn.2d 700, 706–07, 927 P.2d 235 (1996). Thus, focusing largely on the purpose of the remarks, we distinguish between "comments" and "mere references" to an accused's prearrest right of silence. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008).

Here, Abram argues that Deputy Maas's testimony that Abram did not answer certain questions that Deputy Maas asked him constituted an impermissible comment on his right to remain silent. Specifically, Deputy Maas testified:

> [State]: Did you ever confront [Abram] about how close you were and there being no car between you?
> [Deputy Maas] Yes. And he would just decline to answer those ones.

IV VRP at 222-23.

17

No. 49882-1-II

The prosecutor did not follow up on the answer regarding Abram's silence, nor did the prosecutor refer to Abram's silence during closing argument. Because this statement was so subtle and brief, it did not emphasize Abram's right to remain silent. The statement was a mere reference and was not a comment on Abram's right to remain silent. Because the statement was a mere reference, it was not inappropriate. Thus, because the prosecutor did not impermissibly comment on Abram's right to remain silent, we hold that his claim of prosecutor misconduct fails. We affirm the convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.

18