IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 86184-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| JASON MICHAEL JENSEN, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — A jury convicted Jason Jensen of one count of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver, both involving fentanyl. On appeal, he challenges the sufficiency of evidence on both counts, contending that he did not know the pills he sold to a confidential informant contained fentanyl. He also challenges the court's use of a pattern jury instruction regarding knowledge rather than his proposed modifications. We conclude the court did not err in giving the pattern instruction. We also conclude the evidence is sufficient to support his convictions. Therefore, we affirm.

FACTS

On January 11, 2021, Detective Adam Haggerty set up a controlled buy from Jensen using a confidential informant. The informant and his car were

searched before the buy began. Haggerty got $1,500 of prerecorded[1] buy funds from Detective Sergeant Tracy Murphy "to purchase 50 counterfeit Percocet pills suspected to contain fentanyl and some heroin." Haggerty gave the money to the informant to buy "between 50 and 60 pills and then as much heroin as we could." Haggerty equipped the informant with a cell phone with a hidden application to record his interactions with Jensen during the buy.

The informant drove his car to an AM/PM minimart in Chehalis, Washington. A surveillance team was already in place. Jensen told the informant to cross the street to a Chevron station. The informant told Jensen he wanted "90 and a ball"[2] for his $1,500.

After the transaction, Haggerty watched the informant return to him, and the informant handed him "54 blue pills stamped with 'M' on one side and '30' on the other" and four grams of heroin. Haggerty later testified that the pills, "at face value, appeared to be Percocet 30s; but in our drug world right now, they're almost all 100% laced with fentanyl."

After leaving the Chevron, Jensen was followed and stopped by several police cars. Murphy searched him and found $1,685 in Jensen's pocket. That money included all the prerecorded buy funds. Another member of the task force searched Jensen's car. He found a fanny pack, inside of which he found a digital

---

[1] Prerecorded means a currency counter has taken pictures of the serial numbers of the bills involved.

[2] Haggerty testified that he did not understand this jargon used by the informant.

scale with heroin residue on it. The fanny pack also contained heroin, plastic baggies, and more suspected fentanyl pills.[3]

Haggerty had the pills tested at the Washington State Patrol's crime lab in Vancouver, Washington. The analyst randomly selected one of the 54 pills for testing, and it was found to contain fentanyl. One of the 15 pills recovered from Jensen's car was also tested and similarly found to contain fentanyl. The pills did not contain any of the 30 milligrams of oxycodone that their markings suggested each should contain.

In October 2022, Jensen was charged with one count of delivery of a controlled substance "to-wit: Fentanyl" (count 1) and one count of possession of a controlled substance with intent to deliver, "to-wit: Fentanyl" (count 2). At trial, Haggerty, Murphy, and the analyst all testified.

After both sides rested, the court heard argument regarding proposed jury instructions. Jensen proposed deleting a one-sentence paragraph from Washington Pattern Jury Instruction (WPIC) 10.02 regarding the legal definition of "knowledge" or, alternatively, adding a second sentence to the paragraph to address the concern that the jury might incorrectly infer that the standard was "should have known." The State opposed the motion, and the court denied it.

The jury returned guilty verdicts on both counts. Jensen timely appeals.

---

[3] These 15 pills became item number 3 for evidence and testing purposes.

DISCUSSION

Jensen challenges the sufficiency of the State's evidence to prove that he knew the substance he delivered was fentanyl and that he possessed fentanyl with the intent to deliver the same. He also challenges the court's refusal to give the modified instruction he proposed to clarify the definition of "knowledge" and claims the prosecutor misstated the knowledge standard in closing argument. In a separate statement of additional grounds, Jensen likewise contends that he did not know that the pills he sold to the State's confidential informant "were in fact counterfeit Percocet M30 pills containing fentanyl."

I.      Jury Instruction on Knowledge

Jensen argues "the [court's] refusal to instruct the jury as [he] requested" with his proposed instruction modifying the standard WPIC 10.02 instruction on knowledge was error and the instruction the court gave instead was improper. We disagree.

We review de novo a trial court's refusal to provide a requested jury instruction where the refusal is based on a ruling of law. State v. Arbogast, 199 Wn.2d 356, 365, 506 P.3d 1238 (2022). Each challenged instruction is evaluated in the context of the instructions as a whole. State v. Brett, 126 Wn.2d 136, 171, 892 P.2d 29 (1995). Assuming evidence sufficient to support it, each party is "entitled to instructions that, when taken as a whole, properly instruct the jury on the applicable law, are not misleading, and allow each party the opportunity to

argue their theory of the case." State v. Redmond, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003).

Knowledge is an element of count 1, delivery of a controlled substance. State v. Boyer, 91 Wn.2d 342, 344, 588 P.2d 1151 (1979) ("we find . . . that guilty knowledge is intrinsic to the definition" of delivery under RCW 69.50.401). By contrast, count 2, possession of a controlled substance with intent to deliver, does not require an additional "guilty knowledge" element. State v. Sims, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992).

RCW 9A.08.010(1)(b) defines "knowledge" as follows:

(b) KNOWLEDGE. A person knows or acts knowingly or with knowledge when:
(i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
(ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

In State v. Shipp, the Washington Supreme Court considered a jury instruction that defined knowledge using this statutory language. 93 Wn.2d 510, 514, 610 P.2d 1322 (1980). The court held "the statute must be interpreted as only permitting, rather than directing, the jury to find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances." Id. at 516. In other words, "the statute merely allows the inference that a defendant has knowledge in situations where a reasonable person would have knowledge," rather than creating a mandatory presumption of knowledge in such a situation. Id. at 512. Because an instruction using the

statutory language could be interpreted as a mandatory presumption or to redefine knowledge to mean negligent ignorance, such interpretations were unconstitutional and violated due process. Id. at 515, 516. See also State v. Leech, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), abrogated on other grounds by In re the Pers. Restraint of Andress, 147 Wn.2d 602, 56 P.3d 981 (2002) ("Shipp concluded that use of this statutory language in the knowledge instruction violated due process because it could be interpreted by the jury as creating a mandatory inference of knowledge, while only a permissive inference is constitutionally permissible.").

In the present case, jury instruction 13 on knowledge is the language from WPIC 10.02:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he acted with knowledge of that fact.
> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

The same pattern jury instruction used here was approved in State v. Leech, 114 Wn.2d at 710. Specifically, regarding the language that "a jury is permitted but not required to find that a person acted with knowledge if that person has information that would lead a reasonable person to believe that facts exist that

6

constitute a crime," the Leech court noted, "The constitutionality of this revised language has been upheld repeatedly." Id.

Jensen proposed adding a second sentence at the end of the second paragraph: "However, the jury should not find knowledge if it finds the person did not actually know a fact, circumstance, or result, even if the jury also finds the person should have known the fact, circumstance, or result." Alternatively, Jensen proposed to omit the second paragraph entirely. He argues that the instruction the court gave "undermines and confuses the actual knowledge requirement and permits the jury to misapply the law," and his "proposed language would have protected against the error created by the instruction employed."

Jensen contends that State v. Allen "illustrates the problem" with the pattern instruction without his additional proposed language. In Allen, the court warned that "[a]lthough subtle, the distinction between finding actual knowledge through circumstantial evidence and finding knowledge because the defendant 'should have known' is critical." State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015). Rather than constructive knowledge, "the jury must find actual knowledge but may make such a finding with circumstantial evidence." Id. But in Allen, there was no challenge to the instruction. Rather, the court held it was reversible error when the prosecutor "repeatedly misstated that the jury could convict Allen if it found that he *should have known." Id.* at 374.

Jury instructions cannot misstate the law. See State v. Hoffman, 116 Wn.2d 51, 110-11, 804 P.2d 577 (1991) ("A trial court is not required to give an instruction which is erroneous in any respect"). However, WPIC 10.02 is a correct statement of the law, Leech, 114 Wn.2d at 710, so the additional sentence Jensen proposed was not necessary. The sentence Jensen proposed to delete from the pattern jury instruction would have the effect of ignoring RCW 9A.08.010(b)(ii) and, thus, would have misstated the law.

Instruction 13 was a correct statement of the law. It did not prevent Jensen from arguing his theory of the case, and he does not argue the instructions as a whole were inadequate. We thus agree with the State that the court did not err by denying Jensen's motion either to delete a sentence from the pattern instruction or add a sentence to it.[4]

## II.     Sufficiency of the evidence

Jensen argues the State's evidence is insufficient to support either his conviction for possession with intent to deliver or for delivery of a controlled substance because he thought the pills were Percocet and he did not know they contained fentanyl. We disagree.

---

[4] Jensen also argues the prosecutor committed misconduct in closing argument. The relevant section of his opening brief, however, does not cite any statement by the prosecutor. RAP 10.3 requires argument that cites to the relevant parts of the record. While Jensen's reply brief does cite to the record, it argues the prosecutor committed misconduct "for the same reasons it was reversible instructional error." As we conclude the court properly instructed the jury, we need not separately address the prosecutorial misconduct argument. Moreover, we note that unlike the prosecutor in Allen, the prosecutor here did not incorrectly state the knowledge standard as "should have known." See Allen, 182 Wn.2d at 374. Rather, the prosecutor here said the evidence showed Jensen "knew," i.e., had actual knowledge: "The buyer knew it was fentanyl. The detective knew it was fentanyl. And because of that, the person selling it knew it was fentanyl."

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). That is, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. at 781 (quoting Salinas, 119 Wn.2d at 201). Circumstantial evidence and direct evidence carry equal weight when determining the sufficiency of the evidence. Id. (citing State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)).

A.      Delivery of a Controlled Substance

To prove the crime of delivery of a controlled substance, the State must prove that the defendant (1) delivered a controlled substance, and (2) knew the delivered substance was controlled. State v. Martinez, 123 Wn. App. 841, 846, 99 P.3d 418 (2004). Proof of "guilty knowledge" means "an understanding of the identity of the product being delivered." Boyer, 91 Wn.2d at 344. See also State v. Valdobinos, 122 Wn.2d 270, 283-84, 858 P.2d 199 (1993) (quoting Boyer, 91 Wn.2d at 344) (Boyer held that guilty knowledge is "an essential element of the crime of *delivery* of a controlled substance. That is, the defendant must have been aware of the nature of the substance being delivered.").

9

For example, in Boyer, the defendant sold five pounds of LSD-laced mushrooms to an undercover agent. 91 Wn.2d at 343. The defendant's argument at trial was that he did not know the mushrooms contained LSD. Id. The jury convicted the defendant for the delivery of a controlled substance, and our Supreme Court affirmed, rejecting the Court of Appeals's suggestion that no mental state need be proven regarding the crime at all.[5] Id. at 344.

As noted above, "a jury is permitted but not required to find that a person acted with knowledge if that person has information that would lead a reasonable person to believe that facts exist that constitute a crime." Leech, 114 Wn.2d at 710. "[T]he State need not present direct evidence" of the defendant's guilty knowledge to prove delivery of a controlled substance. State v. Hudlow, 182 Wn. App. 266, 288, 331 P.3d 90 (2014). "The elements of a crime may be established by either direct or circumstantial evidence, and one type of evidence is no more or less trustworthy than the other." Id. (quoting State v. Rangel-Reyes, 119 Wn. App. 494, 499, 81 P.3d 157 (2003). Thus, while "the jury must find actual knowledge . . . [it] may make such a finding with circumstantial evidence." Allen, 182 Wn.2d at 374.

Jensen argues the State has "no proof of knowledge *by the defendant."* He argues that the State did not present any law enforcement officers' testimony about how drugs are bargained for and sold, but rather, what "they believed or

---

[5] In Boyer, the Supreme Court rejected the defendant's challenge to a jury instruction permitting the jury to infer guilty knowledge from the act of delivery on the ground that the defendant himself had proposed the instruction. Id. at 343-44.

knew as to whether the pills were fentanyl." Jensen's explanation for his interaction with the State's confidential informant is that the informant said he had cancer and had run out of Percocet for pain. Jensen claims that at the time, he "was a heavy user of Percocet M30 pills and had enough to sell [the informant] what he requested without jeopardizing my ability to sustain my addiction" so he "gave [the informant] a quantity of my own supply of Percocet M30 pills." He alleges that "the first time [he] became aware [he] was using and had sold fentanyl" was after he was arrested.[6]

Jensen attempts to distinguish this case from Hudlow. In Hudlow, the court stated, "The strongest evidence of knowledge is the price Thomas Hudlow accepted in exchange for the small package." 182 Wn. App. at 288. Along with testimony that methamphetamine typically sells for $10 per decigram (0.1 grams) and for $110 Hudlow sold the informant 1.28 grams, Hudlow and the informant also "shook hands indicating agreement." Id. at 288-89. Thus, the court reasoned, "[b]ased on Hudlow accepting a price suitable for the amount of methamphetamine sold, the jury could reasonably infer that Hudlow knew the substance delivered was methamphetamine."[7] Id. at 289.

Jensen argues that the facts of his transaction are different from Hudlow "because the price that Hudlow accepted matched" the price testified to by

---

[6] Jensen did not testify to, and the trial record does not contain evidence of, this account described in Jensen's SAG.

[7] In Hudlow, the court also held that testimony was admitted in violation of the confrontation clause, so it reversed Hudlow's conviction. 182 Wn. App. at 287, 290. However, because the State's evidence was sufficient, the court remanded for a new trial. Id. at 290.

detectives. Reply Brief of Appellant 7 (citing Hudlow, 182 Wn. App. at 288). But even without testimony about a unit price for fentanyl, here, as in Hudlow, the informant and his car were searched before the controlled buy. The confidential informant was given an amount of money with instructions to buy a particular amount of drugs: $1,500 in prerecorded buy money for "between 50 and 60 pills and then as much heroin as we could." The informant went to the planned buy location, an Arco AM/PM. Jensen told the informant to come to the Chevron station across the street instead, and they completed their deal there. The informant carried a hidden recording device during the entire transaction. As in Hudlow, Jensen and the informant came to an agreement based on the amount of money exchanged for the amount and type of drugs Jensen delivered in exchange.

The informant drove away from the transaction without an opportunity to obtain the drugs from any source other than defendant, as in Hudlow. 182 Wn. App. at 289 ("confidential informant had no opportunity to obtain the methamphetamine from any other source than Hudlow"). After the transaction, the informant handed over to Haggerty 54 blue pills and heroin. Officers followed Jensen from the transaction onto the freeway and then to a parking lot, where he and his car were searched. When the police arrested Jensen, they found money in his pocket that matched the prerecorded buy money given to the informant and more of the same blue pills.

Haggerty had the pills tested. He testified that, while the pills "at face value, appeared to be Percocet 30s . . . in our drug world right now, they're almost all 100% laced with fentanyl." The State's forensic scientist, who tested the pills, confirmed that both the pills sold to the informant and the pills found in Jensen's car were fentanyl pills.

We conclude that based on the evidence, any rational trier of fact could find, beyond a reasonable doubt, that Jensen had actual knowledge that the pills he delivered to the confidential informant were fentanyl. As the evidence also establishes the other elements of the charged crime of delivery of a controlled substance, there was sufficient evidence to convict Jensen on count 1.

###### B. Possession of a Controlled Substance with Intent to Deliver

In contrast to the crime of *delivery* of a controlled substance, the crime of possession of a controlled substance *with intent to deliver* does not require an additional "guilty knowledge" element. Sims, 119 Wn.2d at 142; This is because "[t]he statutory elements of the crime of unlawful possession of a controlled substance with intent to manufacture or deliver include the requisite mental state, *i.e.,* the *intent* to manufacture or deliver a controlled substance." Id.; see also Valdobinos, 122 Wn.2d at 284 ("the very crime of intent to deliver includes [the] mens rea component" for possession with the intent to deliver). Thus, to prove the crime charged in count 2, the State was required to prove (1) unlawful possession (2) with intent to manufacture or deliver (3) a controlled substance. Sims, 119 Wn.2d at 141 (citing RCW 69.50.401(a)).

" ' [The] specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability.' " Goodman, 150 Wn.2d at 781 (quoting Delmarter, 94 Wn.2d at 638). The evidence shows that the informant arranged a transaction with Jensen to exchange money for controlled substances, fentanyl and heroin. After the transaction, the informant gave Haggerty heroin and 54 blue pills that were later confirmed to contain fentanyl, a controlled substance. Jensen was arrested with the prerecorded buy money in his pocket. When detectives searched his car, they found a digital scale with heroin residue, and, inside a fanny pack, more of the same blue pills that testing showed to be fentanyl. We conclude any rational trier of fact could infer from Jensen's conduct and the other evidence described above that, beyond a reasonable doubt, Jensen possessed a controlled substance with the intent to deliver it.

## CONCLUSION

The trial court did not err in rejecting Jensen's proposed modifications to jury instruction 13 and by giving the pattern jury instruction on knowledge, WPIC 10.02. We further conclude that the evidence was sufficient to prove both the crimes for which Jensen was convicted.

Affirmed.

_Chung, J._
_____

14

WE CONCUR:

_Birk, J._

_Mann, J._