## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**JULY 11, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 39156-6-III |
| | ) | |
| R.D. | ) | PUBLISHED OPINION |
| | ) | |

PENNELL, J. — The mother of six-year-old R.D. appeals a juvenile court order finding R.D. to be a dependent child and requiring continuation of R.D.'s out-of-home placement. The mother claims evidentiary error and violations of the federal Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and the Washington State Indian Child Welfare Act (WICWA), chapter 13.38 RCW. We disagree with the mother's request for relief on the evidentiary claim. However, we agree the Department of Children, Youth, and Families has not provided "active efforts" to prevent the breakup of R.D.'s family as required by ICWA and WICWA. We therefore remand for further proceedings.

FACTS

On October 18, 2021, the Department, through Child Protective Services (CPS), received an intake report concerning R.D.'s mother's purported drug use and mental health issues. Stella Bear, a CPS investigator, was assigned to the case. Ms. Bear initially contacted the mother by text message on October 21, then made unsuccessful attempts to meet with R.D. and her mother on October 22, 23, and 24. The mother initially agreed to participate in an interview scheduled for October 25, but failed to respond on that day.

No. 39156-6-III
*In re Dependency of R.D.*

Ms. Bear's continued efforts over the next five days to see R.D. and her mother were also unsuccessful.

Just before midnight on October 30, 2021, the mother was arrested on suspicion of driving under the influence and recklessly endangering R.D. The allegations were that the mother was intoxicated and fought with her own mother (R.D.'s grandmother). When the mother attempted to drive away with R.D. in the car, the grandmother called the police. Law enforcement officers caught up with the mother as she was walking away from her car with R.D. in tow. At the time, the mother appeared "[v]ery intoxicated." Clerk's Papers (CP) at 488. She refused to attempt field sobriety tests or to give a breath sample.

The arresting officer told the mother they could take R.D. back to the residence of her grandmother, but the mother refused because of their previous argument. The officer contacted CPS and R.D. was placed into protective custody.[1]

After R.D.'s removal, the arresting officer obtained a warrant for a blood sample. Unfortunately, the sample was never tested because the officer mistakenly left the vials of the mother's blood on top of his patrol car. The vials were subsequently run over by

---

[1] R.D. was first placed at an emergency foster home and was later transferred to the care of a family friend who the mother proposed as a temporary placement and who was subsequently approved by the Department.

No. 39156-6-III
*In re Dependency of R.D.*

another officer's vehicle. According to the mother, criminal charges were dismissed,

ostensibly due to the botched blood sample.

The Department filed a dependency petition on November 2, 2021, alleging the

mother's mental health and substance abuse placed R.D. at risk. The juvenile court held

an uncontested shelter care hearing the following day and ordered R.D.'s continued out-

of-home placement. The mother was in attendance. As part of shelter care, the mother

agreed to complete a chemical dependency assessment, random urinalysis testing, a

mental health assessment, and a parenting program. The mother was granted three weekly

supervised visits with R.D. Initially, one weekly visit was to take place at the home of

R.D.'s temporary guardian. However, the guardian eventually refused to supervise visits,

citing concerns about the mother's behavior, and these visits were moved to a licensed

facility. The mother's participation with visitation became inconsistent after this change.

As required by the shelter care order, the mother completed a chemical dependency

evaluation with Imer Diaz, a substance use disorder professional at the American Indian

Community Center. Mr. Diaz apparently diagnosed the mother with a handful of

substance use disorders, including severe and active alcohol use disorder, and

recommended detox and inpatient treatment. The mother apparently disagreed with

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39156-6-III
*In re Dependency of R.D.*

Mr. Diaz's assessment, denied she needed inpatient treatment, and vowed to complete a different evaluation. The mother never followed up on this promise.

The mother completed two court-ordered urinalysis exams: one each on November 3 and 9, 2021. Both tests were positive for alcohol at levels significantly above the minimum cut-off. The mother did not show for urinalysis tests that had been scheduled for November 18 and December 1.

A juvenile court commissioner held a dependency fact-finding hearing in April 2022. At the hearing, the court heard from the doctor who analyzed the mother's urinalysis exams; the arresting officer from the October 30, 2021, incident; CPS investigator Stella Bear; Department social worker Alix Sieg; and the mother. The court did not hear testimony from Imer Diaz, as the State's attempts at contacting him had been unsuccessful.

The professionals who testified at the fact-finding hearing indicated they had limited contact with the mother. Ms. Bear admitted she had only three interactions with the mother: two phone calls and one in-person meeting. Ms. Sieg admitted she had not had any in-person contact with the mother. According to Ms. Sieg, this was because the mother had indicated she wanted her attorney present during all contact with the

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39156-6-III
*In re Dependency of R.D.*

Department. The arresting officer testified to his interactions with the mother on the night of her arrest, as set forth above.

Although Imer Diaz did not testify, the court admitted Mr. Diaz's chemical dependency evaluation report over the mother's hearsay objection.

The State also filed a declaration from Richard England, a purported ICWA expert. The relevance of the declaration was that R.D.'s paternity had not been settled and one of her potential fathers allegedly had heritage through the Kalispel Tribe of Indians. In addition, an ancestry chart indicated the mother might also have Native American ancestry, although she apparently denied any such ancestry at an earlier proceeding. The mother did not object to Mr. England's declaration.

Mr. England declared he had familiarized himself with R.D.'s situation by reviewing case documents and by speaking with R.D.'s temporary guardian. Mr. England did not speak to the mother, although he attempted to contact her via e-mail. Mr. England opined that placing R.D. in her mother's custody would likely result in serious emotional or physical damage to the child. Mr. England also opined that ICWA's "active efforts" requirement had been satisfied. He justified this opinion by listing the Department's service referrals and the Department's efforts to establish paternity and locate R.D.'s other relatives.

5

No. 39156-6-III
*In re Dependency of R.D.*

During her testimony, the mother vacillated between denying alcohol use and the need for services and admitting to episodes of significant binge drinking and struggles with untreated mental illness. The mother stated she did not believe the Department's services were necessary, but she might be open to an additional chemical dependency evaluation and a parenting program.

The juvenile court found R.D. dependent and entered a dispositional order continuing R.D.'s out-of-home placement. The court also ordered services for the mother, including substance use and mental health treatment. In its oral ruling, the court expressed doubt about the mother's credibility as a witness. The court also held ICWA's requirements had been satisfied.[2]

The mother timely appealed.

## ANALYSIS

The mother's arguments on appeal concern the admissibility of the chemical dependency evaluation report and alleged noncompliance with ICWA and WICWA.

---

[2] The dependency fact-finding hearing was held by a court commissioner. The mother moved for revision of the commissioner's decision. At issue on revision was the admissibility of the chemical dependency evaluation report. A superior court judge denied revision and maintained the commissioner's disposition, concluding the report was admissible and, in the alternative, that any error in admitting the report was harmless. We review the judge's decision, not the commissioner's. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004).

No. 39156-6-III
*In re Dependency of R.D.*

We address each in turn.

*Admissibility of the chemical dependency evaluation*

The mother contends the juvenile court improperly admitted Imer Diaz's chemical dependency evaluation report over her hearsay objection.[3] The State denies the chemical dependency report constituted hearsay. According to the State, the report was admissible either as a statement of a party-opponent, *see* ER 801(d)(2); a statement for purposes of medical diagnosis or treatment, ER 803(a)(4); or as a basis for Ms. Sieg's expert opinion, *see* ER 703, 705. In the alternative, the State argues harmless error.

We agree with both parties in part. The mother is correct that Mr. Diaz's report was erroneously admitted over her hearsay objection. Nevertheless, we agree with the State that admission of the report was harmless and therefore does not compel reversal of that ruling.

The rules of evidence apply at a trial court's dependency fact-finding hearing. RCW 13.34.110(1); *see also In re Dependency of A.C.*, 1 Wn.3d 186, 192, 525 P.3d 177 (2023). Under the rules, hearsay is inadmissible unless an exclusion applies. *See* ER 802.

---

[3] In her brief, the mother appears to claim the testimony of Ms. Bear and Ms. Sieg was broadly riddled with hearsay. However, because there were no overruled hearsay objections apart from the objection to the chemical dependency evaluation report, this argument has not been preserved. *See State v. Townsend*, 2 Wn. App. 2d 434, 442, 409 P.3d 1094 (2018); *see also* RAP 2.5(a).

No. 39156-6-III
*In re Dependency of R.D.*

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Hudlow*, 182 Wn. App. 266, 278, 331 P.3d 90 (2014) (citing ER 801(c)). While a court's decision to admit evidence is reviewed for abuse of discretion, a court's interpretation of evidentiary rules is reviewed de novo. *In re Welfare of M.R.*, 200 Wn.2d 363, 376, 518 P.3d 214 (2022).

The chemical dependency report was prepared by Imer Diaz, an out-of-court witness who did not testify at the juvenile court hearing. The report was admitted to establish the mother had a chemical dependency problem, as Mr. Diaz opined in the report. The report thus fits the definition of hearsay as set forth by the rules of evidence. *See* ER 801(a)-(c).

Contrary to the State's arguments on appeal, Mr. Diaz's report was not admissible as a statement of a party-opponent. The rules of evidence exclude statements by party-opponents from the hearsay definition. *See* ER 801(d)(2). What this means is a party to a case—here, the mother—cannot object when their opponent—here, the State—attempts to introduce their own statements against them. But the statements at issue here are those of Imer Diaz, not the mother. Had Mr. Diaz testified, the rules of evidence would have allowed him to recount the mother's admissions to him as statements of a party-opponent. But because Mr. Diaz did not testify, his report remained an out-of-court statement that

8

No. 39156-6-III
*In re Dependency of R.D.*

fell squarely within the definition of hearsay. *See* ER 805 (explaining, in the context of double hearsay, that each part of an out-of-court statement must be analyzed under the hearsay rules); *State v. Hamilton*, 196 Wn. App. 461, 482, 383 P.3d 1062 (2016) (applying double-hearsay rule to statements of a party-opponent contained within medical records).

Nor was the report admissible as a statement for purposes of medical diagnosis or treatment under ER 803(a)(4). The same reasoning applies. The primary statements at issue were made by Imer Diaz. The mother's hearsay statements were imbedded in Mr. Diaz's statements. The mother's out-of-court statements to Mr. Diaz may have constituted statements for purposes of diagnosis or treatment. But that covers only one level of hearsay. *See Spohn v. Dep't of Lab. & Indus.*, 20 Wn. App. 2d 373, 379, 499 P.3d 989 (2021). To be admissible, Mr. Diaz's out-of-court statements also needed to fall within their own hearsay exception. *See* ER 805; *Hamilton*, 196 Wn. App. at 482-83 (applying double-hearsay rule to statements made for purpose of diagnosis or treatment contained within medical records). No such exception has been identified.[4]

---

[4] The State does not argue that Imer Diaz's evaluation report qualified as a business record under RCW 5.45.020. In any event, no foundation was made for the report to qualify as a business record. *Hamilton*, 196 Wn. App. at 483 (medical records not admissible as business records without foundation).

9

No. 39156-6-III
*In re Dependency of R.D.*

As a final theory of admissibility, the State invokes evidentiary rules allowing expert witnesses to share hearsay they relied on in forming their expert opinions to explain how they reached those opinions. *See A.C.*, 1 Wn.3d at 192 (citing ER 703 and ER 705). The evidence rules allow experts to disclose, during cross-examination, the information used to form their opinions, even if the information would otherwise qualify as hearsay. *See* ER 705. Such disclosure is relevant to the nonhearsay purpose of assessing the credibility and reliability of the expert's testimony. But hearsay relied on by an expert cannot be considered by the court "as substantive evidence." *A.C.*, 1 Wn.3d at 192.

As the social worker assigned to this case, Ms. Sieg was an expert who apparently relied on the chemical dependency evaluation in arriving at her conclusions. While Ms. Sieg could have referenced the evaluation in explaining her opinions, Ms. Sieg's testimony did not render the evaluation otherwise admissible. *See In re Welfare of J.M.*, 130 Wn. App. 912, 924, 125 P.3d 245 (2005) ("ER 705 is not a mechanism for admitting otherwise inadmissible evidence."). The juvenile court should have sustained the mother's hearsay objection to the chemical dependency evaluation report.

Although the chemical dependency evaluation was erroneously admitted over the mother's hearsay objection, this does not automatically compel reversal. Instead,

No. 39156-6-III
*In re Dependency of R.D.*

a harmless error analysis applies. In this context, we review the evidence in the record

that was untainted by evidentiary error and ask "whether it was reasonably probable

that absent the error, the outcome of the trial would have been different." *A.C.*, 1 Wn.3d

at 195.

Based on our review of the record, we conclude the evidentiary error was harmless

because it did not "materially affect[ ]" the outcome of the proceedings. *Id.* Even

excluding the chemical dependency evaluation, the mother's own testimony[5] and the

circumstances surrounding her arrest provided sufficient evidence of an unaddressed

problem with alcohol. The contents of the chemical dependency evaluation were merely

cumulative of other evidence. A different outcome was not reasonably probable even if

the evaluation had been excluded from evidence. Thus, the error was harmless.[6]

---

[5] For instance, the mother testified that the night before her drunk-driving arrest, she consumed a copious amount of Goldschlager liqueur until 5:00 a.m. or 6:00 a.m., while R.D. slept in another room. Then, immediately upon release from jail, she drank at least two tall cans of high-alcohol content beer.

[6] Because admission of the chemical dependency evaluation was harmless error, we need not address the mother's argument that her trial counsel provided ineffective assistance by failing to provide a bench copy of the evaluation report to the superior court judge prior to the revision hearing.

No. 39156-6-III
*In re Dependency of R.D.*

*"Active efforts" under ICWA and WICWA*

Before a court can order an involuntary out-of-home placement of an Indian[7] child,

both ICWA and WICWA[8] require the State to

> satisfy the court that *active efforts* have been made to provide remedial
> services and rehabilitative programs designed to prevent the breakup of the
> Indian family[9] and that these efforts have proved unsuccessful.

RCW 13.38.130(1) (emphasis added); 25 U.S.C. § 1912(d) (emphasis added).

The "'active efforts'" requirement is more stringent than the "'reasonable

efforts'" standard applicable to non-ICWA/WICWA cases and requires a "higher level of

engagement" from the State's social workers. *In re Dependency of G.J.A.*, 197 Wn.2d

868, 875, 489 P.3d 631 (2021). The Department is not relieved of the active efforts

---

[7] This opinion uses the term "Indian" because it is the statutory term of art used in ICWA and WICWA. *See* 25 U.S.C. § 1903(3); RCW 13.38.040(6). At times, we also employ that nomenclature even when not quoting the statute. *Cf.* Adam Crepelle, *The Law and Economics of Crime in Indian Country*, 110 GEO L.J. 569, 572 n.45 (2022) (noting that "Indian" is also the preferred term of some tribes, and citing sources). At times, we also use the less colloquial terms, "Native" and "Native American," which are also appropriate except when referencing specific statutory language. *See generally In re Dependency of Z.J.G.*, 196 Wn.2d 152, 157 n.3, 471 P.3d 853 (2020); *In re Dependency of G.J.A.*, 197 Wn.2d 868, 873 n.1, 489 P.3d 631 (2021).

[8] We apply ICWA and WICWA coextensively unless one provision provides greater protection, in which case the more protective provision prevails. *See In re Welfare of A.L.C.*, 8 Wn. App. 2d 864, 872-73, 439 P.3d 694 (2019); 25 U.S.C. § 1921.

[9] An "Indian family" is an Indian child's family, regardless of the parent's Indian status. *See In re Adoption of T.A.W.*, 186 Wn.2d 828, 847, 383 P.3d 492 (2016).

12

No. 39156-6-III
*In re Dependency of R.D.*

requirement simply because a parent appears uninterested or because efforts would appear to be futile. *Id*. at 875-76, 903. Instead, the Department has an ongoing obligation to actively engage in thorough, timely, and culturally appropriate efforts at family reunification regardless of how those efforts are received. *Id*. at 875-76; *see also* 25 C.F.R. § 23.2. "A parent's lack of engagement is relevant only insofar [as it relates to] the Department's burden to prove its efforts were unsuccessful." *G.J.A.*, 197 Wn.2d at 906.[10]

Whether the Department has satisfied the active efforts requirement is a mixed question of law and fact. *Id.* at 887-88. We review factual findings for substantial evidence and the legal question of whether the Department has satisfied the active efforts requirement de novo. *Id*. at 888.

    *1.    Requirements for triggering ICWA and WICWA review*

Before addressing the merits of whether the Department complied with its obligations under ICWA and WICWA, we briefly address two foundational questions

---

[10] The Department must document its provision of active efforts in the record, including by retaining information on "[d]ates, persons contacted, and other details evidencing how [it] provided active efforts," and "[r]esults of the active efforts provided and, where the results were less than satisfactory, whether [it] adjusted the active efforts to better address the issues." *G.J.A.*, 197 Wn.2d at 893 (citing BUREAU OF INDIAN AFFAIRS, U.S. DEP'T OF INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 43, 44 (2016); 25 C.F.R. § 23.120(b)). But documentation merely serves to prove the existence of active efforts. It is not a substitute for actually engaging in active efforts.

No. 39156-6-III
*In re Dependency of R.D.*

lurking within the trial court record and the briefing on appeal. First, was the dependency

court obliged to treat R.D. as an Indian child? Second, are the ICWA and WICWA issues

preserved for appellate review? As explained below, the answer to both questions is

"yes."

      *a.      The juvenile court had reason to know R.D. may be Indian*

ICWA and WICWA apply whenever a court has "reason to know" a child "is *or*

*may be* an Indian child." *In re Dependency of Z.J.G.*, 196 Wn.2d 152, 174, 471 P.3d 853

(2020) (emphasis added); *see also* 25 U.S.C. § 1912(a); RCW 13.38.070(1); 25 C.F.R.

§ 23.107(b)(2). A juvenile court has reason to know a child is an Indian child "when any

participant in the proceeding indicates that the child has tribal heritage." *Z.J.G.*, 196

Wn.2d at 158, 175.

In a situation like this one—where there have been various indications that

R.D. may have tribal heritage but the court lacks "sufficient evidence to determine that

[she] is or is not an 'Indian child,' the court must . . . [t]reat the child as an Indian child,

unless and until it is determined on the record that the child" is not Indian. 25 C.F.R.

§ 23.107(b)(2). Though there was some confusion about this in the trial court, the State

concedes on appeal that ICWA and WICWA apply. *See* Br. of Resp't at 13 n.4.

14

No. 39156-6-III
*In re Dependency of R.D.*

    b.  *Error preservation hurdles do not apply in this context*

  During the fact-finding hearing, the mother's attorney specifically disclaimed

ICWA and WICWA applied to her case. Normally, the doctrine of invited error would

preclude a litigant from asserting error on appeal based on a previously disclaimed legal

theory. *See In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995).

However, invited error does not apply in this context. *See In re Dependency of A.L.K.*,

196 Wn.2d 686, 696-97, 478 P.3d 63 (2020); *see also In re Adoption of T.A.W.*, 188 Wn.

App. 799, 807-08, 354 P.3d 46 (2015) (holding parent could raise active efforts argument

for the first time on appeal), *aff'd*, 186 Wn.2d 828, 383 P.3d 492 (2016).

  In addition, in her briefing on appeal, the mother fails to meaningfully explain why

the State failed to comply with ICWA and WICWA.[11] Normally, we would decline to

review this type of bald legal claim. *See* RAP 10.3(a)(6); *Brownfield v. City of Yakima*,

178 Wn. App. 850, 875-76, 316 P.3d 520 (2013) ("We do not consider conclusory

---

  [11] The mother devoted a section of her opening brief to active efforts, which mostly consisted of citations to general legal principles. The mother's application of these principles to her case was limited to the following three sentences: "In the current case, there was no testimony regarding ICWA, but the trial court entered findings and conclusions that the Department made active efforts and that it provided testimony form [sic] an Indian expert. . . . The record does not support these findings and conclusions. As a result, the Department failed to meet the heightened standards under ICWA." Pet'r's Br. at 18. The mother did not file a reply brief.

15

No. 39156-6-III
*In re Dependency of R.D.*

arguments . . . .”). But because courts have been specially charged with monitoring compliance with ICWA and WICWA regardless of the parties’ compliance with expectations regarding error preservation, we will independently review the record to discern whether the Department complied with the active efforts requirement.

2.      *The Department failed to provide active efforts*

Going to the merits of the issue on appeal, the record reveals the Department fell far short of its obligation to provide active efforts.

Ms. Sieg’s interactions with the mother did not qualify as active efforts. The strongest evidence supporting this conclusion is that Ms. Sieg never met with the mother in person. We recognize the mother was combative, resistant to treatment, and insistent on having her attorney present. These obstacles may have made the provision of services difficult. But they were not insurmountable. The mother’s counsel could have been included in meetings. Furthermore, ICWA and WICWA required Ms. Sieg to meaningfully engage with the mother in an effort to help her to understand her struggles with alcohol abuse and mental health disorders and to overcome her resistance to treatment. *See G.J.A.*, 197 Wn.2d at 895; *see also* 25 C.F.R. § 23.2(2) (noting active efforts includes “helping . . . parents to *overcome* barriers” to reunification (emphasis added)).

16

No. 39156-6-III
*In re Dependency of R.D.*

Ms. Sieg testified she made "all of the referrals that were court ordered." CP at 462. But referrals alone are not sufficient. RCW 13.38.040(1)(a)(ii); *see also A.L.K.*, 196 Wn.2d at 699-700. Ms. Sieg should have gone further to help the mother follow up on the referrals. This may have included personally providing transportation, helping the mother make phone calls, or filling out necessary paperwork. *See A.L.K.*, 196 Wn.2d at 701 (faulting social worker who "did not drive [mother of Indian children] to services"); *G.J.A.*, 197 Wn.2d at 892, 896-97 (holding social worker should have accompanied parent to bus stop and helped her make calls to service providers). The fact that the mother may not have wanted this type of help did not excuse the Department from maintaining persistent efforts to provide it. *See id.* at 906.

We recognize the Department provided the mother with financial support, including a cell phone with prepaid minutes and money for rent. CP at 464. These resources were undoubtedly helpful, but they were not tailored to help the mother overcome her barriers to reunification with R.D., which Ms. Sieg identified as "chemical dependency and mental health" concerns. *Id.* at 474. ICWA and WICWA require social workers to do much more. *See G.J.A.*, 197 Wn.2d at 895 (holding social worker failed to provide active efforts even where she "provided [mother of Indian children] with a gift card, a bus pass, and general information about local services").

17

No. 39156-6-III
*In re Dependency of R.D.*

Nor did Ms. Bear's contacts with the mother qualify as active efforts under ICWA and WICWA. Apart from being limited, as opposed to ongoing, Ms. Bear's involvement was designed to obtain information for the State, not to provide remedial services for the mother. The State undoubtedly had an important interest in investigating whether there was cause to intervene in R.D.'s life. But the fact that this effort was legitimate does not mean anything with respect to the Department's duty to facilitate family reunification.

Richard England's declaration is also unhelpful in establishing active efforts. While Mr. England claimed the Department engaged in active efforts, he failed to substantiate this claim. Mr. England's declaration contains a paragraph listing the referrals made to the mother. *See* CP at 263. But no mention is made of any affirmative steps the Department took to help the mother act on these referrals. Rather, Mr. England goes on to state that the mother "needs to take responsibility for her behaviors and come to understand the detriment that she has caused to her daughter through her inappropriate and dangerous behaviors." *Id.* This conclusory expectation, that the mother find within herself the wherewithal to overcome her resistance to services, runs contrary to the expectations of ICWA and WICWA. *See G.J.A.*, 197 Wn.2d at 895 ("Simply providing referrals and expecting a parent to take the next steps . . . demonstrates a failure to recognize why we hold the Department to a higher standard when working with Native

18

No. 39156-6-III
*In re Dependency of R.D.*

families.").

Our de novo review of the uncontested facts demonstrates the Department failed its obligation to provide active efforts to reunify R.D. with her mother. R.D.'s continued out-of-home placement, therefore, has failed to comport with ICWA and WICWA.

### 3. Remedy

The Department's violation of the active efforts requirement does not mandate reversal of the order of dependency. *See A.L.K.*, 196 Wn.2d at 703. Instead, the remedy at this stage of the proceedings is for the trial court to return R.D. to her mother's care unless the State can establish doing so would subject R.D. to substantial and immediate danger or threat of danger. *Id.* at 703-04 (citing 25 U.S.C. § 1920 and RCW 13.38.160). We therefore remand for this remedy. *See id.* at 703.

## CONCLUSION

While the active efforts requirement formally applies to social services providers, in practice it also applies to courts. *See G.J.A.*, 197 Wn.2d at 902. When presented with a case that may involve an Indian child, courts must be proactive and ensure at every stage of the proceedings that the State has lived up to the promises of ICWA and WICWA. *See id.* at 907. This kind of effort takes courts outside of our comfort zone. We typically rely on the parties to develop the record and identify legal issues. When presented with facts

19

No. 39156-6-III
*In re Dependency of R.D.*

outside of our knowledge, we often prefer to rely on experts for testimony and advice. But ICWA and WICWA demand we do more. We must become familiar with the generational trauma wrought by our country's policy of separating Indian children from their lands and their families. And upon involving ourselves in child custody cases, we must carefully study the requirements of ICWA and WICWA and ensure all professionals involved honor the important requirements of the law.

We reverse in part the superior court order denying revision and vacate the juvenile court's dependency / disposition order finding the Department engaged in "active efforts" as required by ICWA and WICWA. This matter is remanded to the trial court with instructions to either immediately return R.D. to her mother or to make the statutorily required finding that returning R.D. to her mother would subject her to "substantial and immediate danger or threat of such danger." 25 U.S.C. § 1920; RCW 13.38.160.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

20